In the Matter of KENNETH F. ANDERSON, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 30, 1991

## APPEARANCES OF COUNSEL

*Sarah Jo Hamilton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance on behalf of respondent.

## OPINION OF THE COURT

Per Curiam.

The Departmental Disciplinary Committee moves for an order confirming the Hearing Panel's findings and conclusions and imposing such sanction as this court deems just, fair and equitable.

Respondent, Kenneth F. Anderson was admitted to the practice of law in New York by the First Judicial Department on September 17, 1979. At all times pertinent to this proceeding respondent has maintained an office for the practice of law within the First Judicial Department.

Charges against respondent alleged that on October 24, 1983, appearing as an attorney for three criminal defendants, respondent posted bail for them. A few days thereafter respondent received repayment of that money from one of the defendants. When the bail money was returned to respondent by the bail bondsman, instead of returning it as agreed, respondent deposited the money in his own personal account and used it for his own expenses. Charge one alleged that by failing to deposit in a special client account the client's portion of the bail money returned to him by the bondsman, respondent violated Code of Professional Responsibility DR 9-102 (A) and 22 NYCRR 603.15 in that he commingled client's money with his own. Charge two alleged that by keeping and spending the bail money respondent converted money belonging to his client to his own use, in violation of Code of Professional Responsibility DR 1-102 (A) (4), which prohibits dishonesty and fraud, and DR 1-102 (A) (6), which prohibits conduct adversely reflecting on fitness to practice law. Charge three alleged that respondent did not keep proper records of client funds, failed to render an accounting and failed to deliver client property upon demand, in violation of DR 9-102 (B) (1), (3) and (4).

On March 21, 1990, respondent appeared before a Hearing Panel which received evidence from respondent under oath.

Respondent testified that one Warren Barksdale had called him on or about October 24, 1983 and had told him that he and two others were being held incarcerated in New Jersey. Warren Barksdale was the brother of respondent's roommate, and friend Albert Barksdale.

After some unsuccessful attempts to arrange bail and obtain a lawyer admitted in New Jersey, respondent learned that the three defendants were being held in Bergen County and he

reached the presiding Judge, who gave him permission to appear for the limited purpose of arraignment only. No fee arrangement was made and no fees were paid to respondent. Respondent testified that he was there solely to help get his roommate's brother out of jail, together with the latter's friends.

At the arraignment, cash bail was set in the amount of $5,000 for each defendant, or a total of $15,000. A bail bondsman, Mr. Callahan, appeared, who agreed that he would bond the three defendants in consideration of collateral in the amount of $7,500. At this point, respondent agreed to loan his own money to the three defendants for this collateral. They were to repay him immediately after their release. There apparently was no discussion as to the rate of interest or whether their repayment obligation was joint and several or not.

The only one who promptly repaid was Turner, who paid back $2,500 to respondent some nine days later. Respondent testifying from memory, said he thought he had been repaid a total of $5,000 during the next two years, i.e., between 1983 and 1985, but was vague as to when. He made this disclosure even though the charges only specified that repayment had been made to him in the amount of $2,500.

In late September 1985, some two years after respondent's loan to the three men, the bondsman, Callahan, returned $5,500 to respondent having deducted $2,000 for his fee.

Respondent admitted that he did not return any funds to Turner, Barksdale or Burke. Respondent testified that he felt at least some of the $5,500 was his money and he gave the impression that he felt he need not hurry to repay the others any more than they had hurried to repay him, particularly when it was he who had done them the favor. Respondent stated that he later had financial problems and could not repay any funds. Five years went by and then this proceeding was brought on a complaint by Turner.

Staff counsel did not cross-examine respondent. She took the position that no evidence should be received from respondent until he filed a sworn written answer. The Panel adjourned the hearing to allow respondent three weeks within which to formally answer the charges and he assured the Panel he would file a formal written answer within that time.

When the hearing reconvened on May 2, 1990 respondent had not filed such an answer and in addition, failed to appear

at the second session. While the staff requested that the Panel sustain the charges based on respondent's default, the Panel refused to do so and went into executive session to consider the charges.

On September 10, 1990, the Hearing Panel issued its written report dismissing all of the charges except a portion of one charge finding that respondent was guilty of conduct which adversely reflected on his fitness to practice law in violation of DR 1-102 (A) (6), recommending a one-year suspension; one member dissenting and recommending disbarment.

The Panel considered respondent's informal written answer, given at the first hearing, and his testimony, to be sufficient to overcome his pleading delinquencies and declined to deem the charges admitted pursuant to 22 NYCRR 605.12 (c) (4). Nevertheless, the Panel found that respondent's failure to respond in a timely professional manner to such serious charges reflects adversely on him and they took this failure into account in their recommendation about sanction.

With respect to the merits of the charges, the Panel found that while respondent made a "limited appearance" on October 24, 1983 at the arraignment of Turner and two others on criminal charges there was no attorney-client relationship with any of them. Respondent made a personal loan of $7,500 to the three and Turner's reimbursement payment to respondent was a repayment of this personal loan. The Panel further found that the money returned to respondent by the bail bondsman was not "client funds" and therefore respondent was under no obligation to segregate this money from his own.

According to the Panel, the most serious charge related to respondent's failure to account for the funds received from the bail bondsman. The Panel found that respondent was entitled to interest for his loan at a rate appropriate to an unsecured loan to persons who had just been arrested on criminal charges. If he had entered into an attorney-client arrangement for the arraignment he would have been entitled to a fee or fees. According to the Panel, he was also certainly entitled to keep $2,000 of the funds returned so as to reimburse himself for Callahan's fee, which was the obligation of Turner, Barksdale and Burke, not of respondent. While the Panel could not balance the books on this transaction given the absence of any formal agreements, as a matter of equity, they concluded that the amount respondent still owed the other three was either relatively small or nonexistent. However,

they found misconduct in respondent's failure to account properly, "but of a less serious nature than charged amounting to conduct reflecting adversely on him as a professional".

With respect to the sanction to be imposed, the Panel stated that respondent's looseness in handling his pleading responsibilities and his failure to appear for the second hearing were aggravating factors.

In mitigation, the Panel considered that respondent was contrite when he appeared before the Panel during the first hearing and he was candid, in that he revealed facts adverse to himself that had either not been known or not charged by the staff. A majority of the Panel concluded that under these circumstances a one-year suspension was warranted. One member concurred but recommended a suspension of three months. One Panel member dissented.

The dissenting member observed that none of the requirements of 22 NYCRR 605.12 (c) (1) through (4) was met, and therefore this member would have found respondent in default.

The dissenting Panel member also found that the pleadings were sufficient to support the charges, finding that there had been an attorney-client relationship between respondent and Turner, that the money returned by the bail bondsman therefore belonged in part to the client and should have been segregated, accounted for and repaid, and that respondent converted client funds. The dissenting member recommended disbarment.

Although served with notice of this petition by mail on January 7, 1991, respondent has failed to interpose an answer.

At the outset, a review of the record indicates that respondent, by failing to submit a formal answer and appear at the second hearing session, left the Hearing Panel in the difficult position of having to decide the merits of the charges and the appropriate sanction to recommend based upon an incomplete record consisting of respondent's testimony which was never subjected to cross-examination. Clearly, respondent's actions with respect to these disciplinary proceedings must be taken into consideration when determining the appropriate sanction to be imposed. 22 NYCRR 605.12 (c) (4) provides: "In the event the Respondent fails either to serve and file an Answer or respond specifically to any allegation or charge, such allegation or charge shall be deemed admitted."

Under the circumstances of this case, however, the Hearing

Panel properly determined that in view of the fact that respondent read an informal answer into the record which he had prepared during a recess at the first hearing session and then gave testimony under oath at the hearing session, the Panel could not ignore the evidence which was presented and deem the charges admitted.

The Panel found that respondent's limited appearance at the arraignment of Turner, Barksdale and Burke was not sufficient to establish an attorney-client relationship between them. It viewed respondent's appearance as being done out of friendship and the subsequent loan of $7,500 by respondent to Turner, Barksdale and Burke as a purely personal transaction which had no attendant fiduciary duties. In view of the testimony presented, however, we find that this was an erroneous conclusion.

When respondent appeared at the arraignment, he did so in the capacity of their lawyer. While he may have been motivated by friendship for this appearance and for his loan of $7,500 of his own personal funds, nonetheless an attorney-client relationship was established. While the matter was handled informally, i.e., no fee arrangement was made; no rate of interest for the loan was discussed and it was never decided whether repayment was a joint or several obligation, it was agreed that the defendants would repay him immediately after their release and that respondent would reimburse them when he was in turn reimbursed by the bail bondsman. Thus, there was some fiduciary relationship established with respect to the funds.

Although the record is not clear on the issue of repayment by the three defendants, at least as far as Turner is concerned he repaid his share of the $7,500 which respondent had advanced for him, to wit: $2,500.

Two years later, when the bondsman returned $5,500 to respondent, having deducted $2,000 for his fee, respondent admitted that he did not segregate these funds into a client's account; he did not account for these funds to his client; and he did not return any funds to Turner, Barksdale or Burke. At that point technically a conversion took place. However, there were sufficient mitigating factors here to distinguish it from the great majority of cases where conversion warrants disbarment.

Respondent could have conceivably charged interest for the

loan, a fee for his appearance and the bondsman fee from any funds he was obligated to return. Thus, while what respondent actually owed Turner may have been very little, or nothing at all, respondent still had a duty to account for the funds to his client. The informal manner in which respondent handled the entire matter is similar to the informal and unprofessional way he has treated these proceedings.

Accordingly, we conclude that respondent is guilty of violating DR 9-102 (A) and 22 NYCRR 603.15 by failing to segregate in a special account the client's portion of the bail money returned to him by the bondsman; DR 1-102 (A) (4) and (6), by keeping and spending the money belonging to his client for his own purposes; and DR 9-102 (B) (1), (3) and (4), by not keeping proper records, failing to render an accounting, and failing to deliver client property upon demand.

In similar cases where the misconduct arose out of an attorney's carelessness, there was no previous history of misconduct (as is the case here); the attorney was mistaken as to his entitlement to his client's funds; and there was no motive to convert, this court has imposed a two-year suspension. (See, e.g., Matter of Altschuler, 139 AD2d 311; Matter of Engram, 129 AD2d 115.)

We deem such a two-year suspension to be warranted not only because of the serious nature of the charges involved but because respondent's misconduct has been compounded by his failure to submit a timely formal answer; his failure to appear at the second hearing session; and now his failure to respond to this motion.

Accordingly, the motion by the Departmental Disciplinary Committee should be denied, the Hearing Panel's findings and conclusions disaffirmed and the charges against respondent sustained and respondent suspended from the practice of law for a period of two years.

ROSENBERGER, J. P., WALLACH, ASCH, KASSAL and SMITH, JJ., concur.

Application to confirm findings of fact and conclusions of law, and for an order imposing whatever sanction this court deems just and equitable denied, the Hearing Panel's findings and conclusions disaffirmed and the charges against respondent sustained and respondent is suspended from the practice of law for a period of two years, effective July 1, 1991.